67543. THE STATE v. TURNTIME.

CARLEY, Judge.
Appellee was indicted for the offenses of entering an automobile with intent to commit a theft, burglary, theft by receiving and possession of a firearm by a convicted felon. Appellee's pre-trial motion to suppress was granted and the state appeals.

The relevant facts are essentially undisputed and are as follows:

Detective Straka, who is a fourteen-year veteran of the Atlanta Police Department, resides at the Colonial Homes Apartments. He is a night manager of Colonial Homes Apartments and provides security at the complex during his off-hours. At approximately 10:30 on the night in question, Detective Straka, who was not on duty at the time, drove into the apartment complex. Before Detective Straka reached his own apartment building, he observed a male step from a dimly lit area behind another building in the complex. Detective Straka was unable to recognize the individual and, because there had been a rash of car break-ins in the parking lot of the complex, he circled the block and returned for further observation. When Detective Straka completed his circuit, he saw the individual "walking up the sidewalk looking in cars as he went . . ." Detective Straka drove past for a closer view and, based upon his personal knowledge, determined that the individual was not a resident of the complex.

Detective Straka drove ahead, parked his automobile and waited for the individual to approach. When the individual did so, Detective Straka introduced himself as a police officer, requested identification and inquired as to the nature of the individual's business in the apartment complex. The individual was then observed to be wearing three coats which, according to Detective Straka's experience, was "conducive to a hold up man's attire." It was also during this encounter that Detective Straka first noticed that the individual was carrying a zippered shaving bag. When Detective Straka observed that the individual was trying to conceal the bag, he inquired about its contents. The individual responded to this inquiry by handing the bag to Detective Straka without comment or protest. Detective Straka began to unzip the bag. At that point, the individual, who was subsequently identified as appellee, fled the scene and unsuccessfully attempted to elude the detective. The zippered bag contained items which led to appellee's multi-count indictment.

Based upon this evidence, the trial court found "that the search and seizure of [appellee] and of [appellee's] satchel was illegal and was carried out by Detective J. S. Straka acting under his authority as an agent of the Atlanta Police Bureau."

1. "[T]he Fourth Amendment in no way prohibits voluntary interaction between citizens and police. [Cits.] 'Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.' [Cit.]" *Bothwell v. State*, 250 Ga. 573, 576 (300 SE2d 126) (1983). In the instant case, there is considerable doubt that the encounter between Detective Straka and appellee was a "seizure" of the latter. See *State v. Reid*, 247 Ga. 445 (276 SE2d 617) (1981); *Bothwell v. State*, supra. "A police officer may ask a citizen to stop without there being a 'seizure' within the meaning of the fourth amendment.

[Cit.]" *Sabel v. State*, 248 Ga. 10, 11 (282 SE2d 61) (1981). However, even assuming that the trial court's finding that a "seizure" of appellee occurred was correct, the further finding that that "seizure" was illegal is clearly erroneous.

"[T]he exigencies of the situation as they reasonably appear at the time to the officer involved must dictate the extent of intrusion into constitutionally protected areas. [Cit.] Momentary detention and questioning are permissible if based upon specific and articulable facts, which, taken together with rational inferences from those facts, justify a reasonable scope of inquiry not based on mere inclination, caprice or harassment . . . [T]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest, to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. [Cits.]" *State v. Misuraca*, 157 Ga. App. 361, 364-365 (276 SE2d 679) (1981).

The application of the above stated legal principles to the facts of the instant case clearly demonstrates that Detective Straka had sufficient "articulable suspicions" to authorize a brief investigatory detention of appellee. See generally *State v. Carter*, 240 Ga. 518 (242 SE2d 28) (1978); *Jones v. State*, 156 Ga. App. 730 (275 SE2d 778) (1980). The parking lot of the apartment complex where appellee was observed had been the scene of recent car break-ins. The nighttime activity of a known non-resident in looking into parked cars while walking through such a complex certainly gives rise to an "articulable suspicion" warranting an officer to conduct further limited inquiry concerning possible criminal conduct. See generally *Allen v. State*, 140 Ga. App. 828, 829 (1) (232 SE2d 250) (1976). Compare *Davis v. State*, 158 Ga. App. 271 (279 SE2d 720) (1981). (Known nonresidency in the neighborhood, *standing alone*, does not amount to *probable cause* to effectuate an immediate *arrest*.) "[C]ourts should give due consideration to the role of experience in a police officer's interpreting certain facts or occurrences. [Cits.]" *Yocham v. State*, 165 Ga. App. 650, 651 (302 SE2d 390) (1983). "The totality of circumstances confronting him, including the time, manner of operation, and place where the officer confronted [appellee], created a justifiable suspicion concerning [appellee's] conduct and warranted a limited investigative detention to determine if a [crime] had taken place. [Cits.]" *State v. Carter*, supra at 518-519. The investigatory detention of appellee was not based on mere inclination, caprice or harassment and the trial court erred in finding on undisputed evidence that the "seizure" of

appellee for the " 'purposes of investigating possibly criminal behavior . . .' " was illegal. *State v. Roberson,* 165 Ga. App. 727, 729 (302 SE2d 591) (1983).

The trial court also found that the "search" of appellee and the "search and seizure" of his satchel were illegal. There is no evidence that appellee was searched or that his satchel was seized and searched. The undisputed evidence shows that Detective Straka merely asked appellee what was in the bag and that, in response, appellee voluntarily surrendered the bag to the officer. A simple inquiry concerning the contents of the bag is not a "search" of the bag. Once an individual has been validly detained on an "articulable suspicion," he may be subjected to " 'a reasonable course of inquiry . . .' " *State v. Roberson,* supra at 729. This scope of inquiry is broader than the mere determination of the suspicious individual's identity. See *State v. Roberson,* supra. It certainly serves no useful purpose to prohibit an officer who has legally detained an individual for the purposes of investigating possible criminal activity from pursuing that investigation by making direct inquiries concerning the observed suspicious activities of the individual. Detective Straka had observed an individual engaged in the nighttime activity of looking into cars parked in an apartment complex where he did not live and where a rash of car break-ins had recently occurred. After stopping the individual, Detective Straka observed that he was wearing "hold up man's attire." To hold that an officer with such knowledge may not, after stopping the individual, even *ask* about the contents of a bag that the individual attempts to conceal from view is contrary to the principle that an officer is constitutionally authorized to *investigate* " 'the circumstances which provoke a reasonable and found suspicion' on [his] part . . ." *State v. High,* 145 Ga. App. 772, 774 (244 SE2d 888) (1978). It is clear that an officer legally detaining an individual on an "articulable suspicion" of criminal activity is not precluded from making a *request* for consent to a search as part of his investigation. See *Connor v. State,* 130 Ga. App. 74 (202 SE2d 200) (1973); *Howard v. State,* 150 Ga. App. 847 (258 SE2d 652) (1979); *Huffman v. State,* 149 Ga. App. 464, 465 (3) (254 SE2d 489) (1979).

There is no evidence that Detective Straka demanded the bag or insisted on personally viewing its contents. The uncontroverted evidence is that appellee, upon being asked the contents of his bag, voluntarily surrendered possession of it to Detective Straka. This evidence admits of no possible interpretation except that appellee tacitly consented to Detective Straka's own personal inspection of the bag. See generally *Traylor v. State,* 165 Ga. App. 226 (299 SE2d 911) (1983). Thus, the discovery of the evidence in the bag was the direct and sole result of appellee's consent and the trial court's finding that the bag was illegally searched and seized was clearly erroneous. *Con-*

*nor v. State,* supra.

2. A momentary "seizure" of appellee was authorized based upon the "articulable suspicions" surrounding his activities and presence on the premises of the apartment complex. There was no "search and seizure" of appellee's bag. The evidence was discovered as the result of appellee's consent to Detective Straka's possession of the bag. The trial court erred in granting the motion to suppress.

*Judgment reversed. Quillian, P. J., and Birdsong, J., concur.*

DECIDED APRIL 12, 1984 —
REHEARING DENIED APRIL 27, 1984 —

*Lewis R. Slaton, District Attorney, Benjamin H. Oehlert III, Joseph J. Drolet, Richard E. Hicks, Assistant District Attorneys,* for appellant.

*John Russell Mayer,* for appellee.