## A04A1113. HARRIS v. THE STATE.
(603 SE2d 476)

PHIPPS, Judge.

George Harris was convicted of two violations of the Georgia Controlled Substances Act and failure to wear a seat belt. He challenges the trial court's denial of his motion to suppress evidence seized during a traffic stop. Because we find that the officers who stopped Harris did not unreasonably expand the scope or duration of the valid traffic stop, we affirm.

---

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous.[1] The reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment and must not disturb the trial court's ruling if there is any evidence to support it.[2] "Further, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial."[3]

The record shows that on June 24, 2001, Bartow County Sheriff's Deputy Anthony Harris stopped a car driven by Harris because Harris was not wearing a seat belt. He asked Harris for his license and proof of insurance and told him that he had pulled him over because he was not wearing his seat belt. Deputy Harris then returned to his car and began writing a traffic citation. Two other men were in the car with Harris. Deputy Harris called for backup because the only officer with him was in training.

Deputy Harris completed Harris's traffic citation but did not give him the ticket or return his driver's license or proof of insurance. Instead, he asked the front seat passenger to get out of the car and then asked him where they were going and whether he was wearing his seat belt. The passenger answered that they were going to the mall and that he was not wearing a seat belt. Deputy Harris began writing the passenger a traffic citation. While Deputy Harris was writing that citation, Candler Pace, another officer with the Bartow County Sheriff's Office, arrived. After Deputy Harris issued the passenger's traffic citation, he told Harris to get out of the car. At that time, Deputy Harris was waiting for information on the status of Harris's driver's license. Deputy Harris asked Harris where they were going and Harris answered that they were going to his hair salon. When Deputy Harris asked Harris whether he had drugs or handguns in the car, Harris said, "no." Deputy Harris then asked Harris if he could search the car, and Harris consented.

After Pace arrived, he looked down into the car for weapons or illegal substances. He saw a large pill bottle under the driver's seat. He considered the bottle suspicious because of its size and its location. He also saw a smaller pill bottle that was partially under the seat. Pace knew that Deputy Harris had gotten consent to search the car. Pace collected both bottles, which the parties stipulated contained hydrocodone and sildenafil.

---

[1] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[2] Id.

[3] *Whitehead v. State*, 258 Ga. App. 271, 273 (1) (574 SE2d 351) (2002).

Deputy Harris testified that he was advised that Harris's license was valid "after everything was completed," but before the tow truck arrived. The record shows that the entire incident lasted 52 minutes, but it is not clear how much time elapsed between the initial stop and Deputy Harris's request for permission to search the car.

Harris claims that the trial court erred by denying his motion to suppress because Deputy Harris exceeded the permissible scope of the initial traffic stop. Harris relies on *State v. Gibbons*.[4]

In *Gibbons*, a state trooper stopped Gibbons and Stinemetz for a seat belt violation and immediately launched into "twenty questions" unrelated to the seat belt violation. During the course of these questions, Stinemetz consented to a search of his pocket which yielded a pill bottle containing cocaine residue. The court recognized that an "officer who questions and detains a suspect for reasons other than those connected with the original purpose of the stop exceeds the scope of permissible investigation unless he has 'reasonable suspicion' of other criminal activity."[5] The trooper admitted that he held Stinemetz's driver's license while asking questions unrelated to the seat belt violation. *Gibbons* upheld the trial court's determination that the detention was unauthorized and concluded that because the consent to search was obtained during the illegal detention, the consent was invalid.[6] The continued detention made the questioning and request to search without reasonable suspicion of criminal activity impermissible.[7]

Here, Deputy Harris detained Harris while waiting to find out if his driver's license was valid. And according to Deputy Harris, he requested the information before he asked Harris to get out of the car and did not find out that Harris had a valid license until "after everything was completed." We have previously held that "an officer conducting a routine traffic stop may request and examine a driver's license and vehicle registration and run a computer check on the documents."[8] We have also recognized that it does not unreasonably expand the scope or the duration of a valid traffic stop for an officer to immediately check the status of a driver's license to determine if the driver is entitled to continue to operate the vehicle.[9]

---

[4] 248 Ga. App. 859 (547 SE2d 679) (2001).

[5] Id. at 863 (2).

[6] Id. at 864.

[7] Id. (Pope, P. J., concurring specially); see also *Henderson v. State*, 250 Ga. App. 278, 280 (551 SE2d 400) (2001).

[8] (Citation and punctuation omitted.) *Williams v. State*, 233 Ga. App. 70, 71 (1) (503 SE2d 324) (1998).

[9] See *State v. Williams*, 264 Ga. App. 199, 202 (590 SE2d 151) (2003).

Construing the record to uphold the trial court's judgment, it appears that Deputy Harris requested information on the status of Harris's driver's license at the time he returned to his car to write Harris a citation for the seat belt violation. He obtained the consent to search before he received a response to that request and thus, before the initial traffic stop had concluded.[10] Under the circumstances, we conclude that the investigating officers did not illegally expand the scope or duration of the stop.[11]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED AUGUST 10, 2004.

*Hicks, Massey & Gardner, Robert M. Gardner, Jr.*, for appellant.
*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.

---

[10] Cf. *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002) (evidence indisputably showed that when the officer returned the defendant's license and insurance card, the initial traffic stop had concluded); *State v. Swords*, 258 Ga. App. 895, 897 (575 SE2d 751) (2002) (once suspicion of unlawful conduct evaporated, officer was not authorized to continue detention to investigate other potential violations of the law).

[11] See *State v. Williams*, supra at 264 Ga. App. 203-204.