S04G0322. SECURITY LIFE INSURANCE COMPANY OF
AMERICA v. ST. PAUL FIRE & MARINE INSURANCE
COMPANY.
(606 SE2d 855)

BENHAM, Justice.

To examine the process by which entitlement to pre-judgment interest is determined under the Unliquidated Damages Interest Act, OCGA § 51-12-14 (UDIA), we granted the writ of certiorari to review the judgment of the Court of Appeals in *Security Life Ins. Co. v. St. Paul Fire &c. Ins. Co.*, 263 Ga. App. 525 (588 SE2d 319) (2003). This is the eighth appellate appearance of this litigation which stemmed from an act of forgery by an agent of Security Life Insurance Company (SLIC) on an application for an insurance policy in 1994.[1] As the surety on SLIC's appeal bond in its efforts to contest its liability to the plaintiffs, the insureds under the policy issued pursuant to the forgery, St. Paul Fire & Marine Insurance Company (SPF&M) paid to the plaintiffs the amount of the most recent judgment rendered by the trial court and was substituted for them on appeal.

1. The UDIA is a statutory means by which an injured party may demand an amount of unliquidated damages from the tortfeasor prior to litigation and, should the tortfeasor decline to meet the injured party's demand, receive damages in the form of pre-judgment interest if "the judgment is for an amount not less than the amount demanded." OCGA § 51-12-14 (a). In the decision under review, the Court of Appeals held that in this case it is the trial court's award of compensatory damages, augmented by a 1996 award of attorney fees and by pre- and post-judgment interest on the award of attorney fees, which is the base amount from which set-offs for payments by co-tortfeasors must be subtracted in making a UDIA determination.

---

[1] See *Security Life Ins. Co. v. Clark*, 229 Ga. App. 593 (494 SE2d 388) (1997) (*Security I*); *Clark v. Security Life Ins. Co.*, 270 Ga. 165 (509 SE2d 602) (1998) (*Security II*); *Security Life Ins. Co. v. Clark*, 239 Ga. App. 690 (521 SE2d 434) (1999) (*Security III*); *Security Life Ins. Co. v. Clark*, 273 Ga. 44 (535 SE2d 234) (2000) (*Security IV*); *Security Life Ins. Co. v. Clark*, 249 Ga. App. 18 (547 SE2d 691) (2001) (*Security V*); *St. Paul Fire &c. Ins. Co. v. Clark*, 255 Ga. App. 14 (566 SE2d 2) (2002) (*Security VI*).

That holding is based on the use in OCGA § 51-12-14 (d) of the word "verdict" as the benchmark. Having made that analysis of the statute, the Court of Appeals overruled its earlier decision in *Restina v. Crawford,* 205 Ga. App. 887 (424 SE2d 79) (1992), which required that set-offs be made against the verdict and the UDIA determination be made using the resulting judgment.

The decision in *Restina* considered legislative intent and the purpose of the UDIA ("a coercive tool . . . encouraging a tortfeasor to make amends . . . short of litigation") and concluded "that where a judgment is less than the verdict due to setoffs for payments already received by victims from tortfeasors, OCGA § 51-12-14 should be construed to entitle a plaintiff to interest only if the amount of the post-setoff judgment is equal to or exceeds the amount of the settlement demand." Id. at 889. In reaching that decision, *Restina* resolved a conflict in OCGA § 51-12-14 between one subsection which refers to "judgment" (subsection (a)) and one relied upon by the majority below which refers to "verdict" (subsection (d)), a conflict ignored by the majority opinion below. Comparing the rationale of *Restina* and the rationale employed by the majority of the Court of Appeals in this case which is overly punitive and fails to reconcile the language of the statute, we conclude the rationale of *Restina* is more sound.

Another reason the Court of Appeals should not have rejected the rationale of *Restina* is that the UDIA has been amended by the legislature since the decision in *Restina* without addressing the conflict resolved in that case. " 'Once the court interprets the statute, "the interpretation has become an integral part of the statute." [Cits.] . . . The principle is "particularly applicable where an amendment is presented to the legislature and the statute is amended in other particulars." ' [Cit.]" *Mitchell v. State,* 239 Ga. 3, 6 (235 SE2d 509) (1977). The judgment of the Court of Appeals that the UDIA determination should be made on the award of compensatory damages augmented by a variety of other awards, being in conflict with *Restina,* was erroneous and must be reversed.

2. In addition to the issue of which portion of a judgment is to be considered for UDIA purposes, SLIC has raised on this appeal several issues relating to the calculation of damages made by the trial court and affirmed by the Court of Appeals. SPF&M filed a motion to strike the portions of SLIC's brief arguing those issues on the ground they are outside the scope of the grant of certiorari. We deny the motion for two reasons. First, although the other issues are not specifically addressed in the question posed to the parties, leaving them unanswered at this point would invite another step in an appellate journey which is already too long. Second, "the posing of questions in no way limits this Court in its decision-making authority. . . . 'Having the case

before us, in its discretion this court can consider any matter presented to or decided by the Court of Appeals. On certiorari, the case comes before us, not an isolated issue in the case.' [Cit.]" (Emphasis omitted.) *Cheeley v. Henderson*, 261 Ga. 498, 500 (405 SE2d 865) (1991), overruled on other grounds, *Hewett v. Kalish*, 264 Ga. 183 (442 SE2d 233) (1994).

3. The Court of Appeals affirmed the trial court's calculations involving pre- and post-judgment interest on an attorney fees award and on the award of compensatory damages. We consider first the addition to the award of compensatory damages of a pre-trial award of attorney fees made by the trial court in 1996 for discovery abuses, plus pre- and post-judgment interest on that award. Those additions were error because the award of attorney fees no longer exists, having been vacated in 2002. See *Security VI*, supra, 255 Ga. App. 14 at 24. When the first jury verdict in this case was entered, subsequent to the trial court's award of attorney fees for discovery abuses, the verdict included an award of attorney fees based in part on the same discovery abuses which the trial court had sanctioned prior to trial. Because the issue of discovery abuse was submitted to the jury and formed part of its award of attorney fees, the trial court properly ruled that to avoid a double recovery, its earlier award of attorney fees was subsumed in the jury's award. The jury's award of attorney fees survived several appeals, but was ordered vacated, as to amount but not liability, in 2002 in *Security VI* because it was based on more than the fraud claim which was ultimately the only claim on which the plaintiffs prevailed. On remand from that appellate decision, the trial court held its award of attorney fees based on discovery abuse was no longer subsumed in the jury's award of attorney fees. However, that decision was no longer available to the trial court because the requirement that the amount of attorney fees be retried was established under the "law of the case rule," under which the ruling in *Security VI* that the amount of attorney fees be retried is binding in all subsequent proceedings in this case, both in the trial court and the appellate courts. *Southern Healthcare Systems v. Health Care Capital Consolidated*, 275 Ga. 247, 248 (1) (563 SE2d 132) (2002). Thus, the affirmance by the Court of Appeals of the trial court's holding that the pre-trial award of attorney fees for discovery abuse was no longer subsumed in the jury's award of attorney fees was error. Since the pre-trial award no longer exists, it necessarily follows that pre- and post-judgment interest on that award cannot be awarded and the affirmance of that addition to the judgment below must also be reversed.

The Court of Appeals also affirmed the trial court's award of post-judgment interest on the compensatory damage award computed from the date judgment was entered on the RICO claim in 1996.

SLIC contends computation from the date of judgment in 1996 was error because that judgment was vacated in 1997 in *Security I*, supra, 229 Ga. App. 593. See *CRS Sirrine v. Dravo Corp.*, 219 Ga. App. 301 (464 SE2d 897) (1995). However, as the Court of Appeals noted in *Security VI*, the original judgment was not vacated, but modified. The appellate holding was that the judgment could not be based on the RICO claim, but could be based on the fraud claim on which the jury had returned a verdict in the plaintiffs' favor. Id. "[T]he decision of whether postjudgment interest should run from entry of the original or second judgment 'turns on the degree to which the original judgment was upheld or invalidated on appeal.' [Cits.]" *CRS Sirrine v. Dravo Corp.*, supra at 304. Here, the modified judgment is based on the same jury verdict and for the same damages as the judgment which was originally entered. Under those circumstances, the trial court was correct in computing post-judgment interest on the damages award from the date of entry of the original judgment in 1996 and the Court of Appeals was correct in affirming that decision.

4. Finally, we turn to the holding by the Court of Appeals that SLIC may not contest the amount of its liability to SPF&M because payment of the judgment by SPF&M is conclusive of SLIC's liability. The Court of Appeals based that holding on *M-Pax, Inc. v. Dependable Ins. Co.*, 176 Ga. App. 93 (5) (335 SE2d 591) (1985), and on OCGA § 10-7-42. We conclude the cited case is distinguishable and the statute was misapplied.

*M-Pax* involved a principal who attempted, in an action for indemnity by the surety on a performance bond, to avoid paying the surety the amount of the judgment entered against the surety, asserting that the surety failed to raise in the underlying litigation defenses which were available to it. Based on OCGA § 10-7-42, the Court of Appeals correctly held that since the payment was made after the entry of judgment and the principal had notice of the action against the surety, the amount of that judgment was conclusive. The present case does not involve, as did *M-Pax*, a separate action by the surety to collect what it paid on the principal's behalf. Instead, it involves a case in which the principal is still engaged in contesting the extent of its liability and in which the judgment is not final because it is still on appeal. Thus, *M-Pax* concerns a situation not present in this case and is not authority for the proposition for which it was cited.

OCGA § 10-7-42, entitled, "Effect of judgment against surety," provides as follows:

> If the payment was made after judgment and the principal had notice of the pendency of the action against the surety, the amount of such judgment shall be conclusive against the principal as to the amount for which the surety was bound.

> If the payment was not made after judgment, the principal may dispute the validity of the payment as to the amount or as to the authority of the person to whom it was paid.

The phrase concluding the first sentence of the Code section, "the amount for which the surety was bound," makes clear that the first sentence applies to situations where the judgment has reached a state of finality. If the judgment were still being appealed, as was the judgment here when SPF&M chose to make payment to the plaintiffs, the surety would not be bound since the amount of the principal's debt to the plaintiffs had not been finally determined. The second sentence of the Code section is the one applicable to this case because the payment came while the judgment was still subject to change. To rule otherwise would make the concept of an appeal bond meaningless, especially in a case such as this one where the amount of the judgment entered by the trial court must be amended due to our reversal of the judgment of the Court of Appeals' affirmance of the trial court's judgment. We conclude, therefore, the Court of Appeals erred in applying the first sentence of OCGA § 10-7-42 rather than the second sentence.

In summary, the judgment of the Court of Appeals is reversed with regard to its holdings that a determination of whether pre-judgment interest is to be assessed is based on the verdict without set-off of payments by co-defendants; that the award of attorney fees for discovery abuse was resurrected after the vacation of the award into which it was subsumed, and that pre- and post-judgment interest could be applied to that award; and that SLIC's liability to SPF&M is fixed by SPF&M's payment of the judgment. With regard to its holding that post-judgment interest on the award of compensatory damages based on the fraud verdict would run from the time of entry of judgment on the RICO verdict, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED DECEMBER 9, 2004 —
RECONSIDERATION DENIED DECEMBER 17, 2004.

*Sutherland, Asbill & Brennan, William D. Barwick, Teresa W. Roseborough, Carla W. McMillian,* for appellant.

*King & Spalding, Byron Attridge, Benjamin F. Easterlin IV, S. Stewart Haskins, Gregory, Christy, Maniklal & Dennis, Hardy Gregory, Jr., Preyesh K. Maniklal, Porter, Orrison & Doster, J. Alexander Porter,* for appellee.