## A05A0636. SALMERON v. THE STATE.
### (614 SE2d 177)

RUFFIN, Chief Judge.

Following a bench trial, the court found Omar Salmeron guilty of trafficking in cocaine. On appeal, Salmeron contends that the trial court erred in denying his motion to suppress. For reasons that follow, we disagree and affirm.

"On appeal from a denial of a motion to suppress, we construe the evidence in favor of the trial court's ruling, and the trial court's application of law to undisputed facts is subject to de novo review."[1] Viewed in this manner, the record shows that on December 11, 2002, Henry County Police Officer Mike Freeman was patrolling traffic on I-75 when he saw a Chevrolet Malibu that was following another vehicle too closely. According to Freeman, after the driver "mashed the brakes," he noticed that one of the Malibu's brake lights was not functioning. Thus, Freeman pulled the car over.

Freeman asked the driver, Salmeron, for his driver's license and insurance information, which Salmeron provided. As he does with all individuals he stops for traffic violations, Freeman asked Salmeron to exit the car for safety purposes. Salmeron walked with Freeman to the rear of the car, and Freeman began filling out the citation. While writing the citation, Freeman engaged in "some small talk" with Salmeron, asking him about his travel plans. According to Freeman, Salmeron said that he had family in Atlanta, which he had been visiting for a few days.

Freeman was somewhat suspicious about Salmeron because the Malibu had been so heavily sprayed with various air fresheners that it made Freeman's nose burn. Freeman thought Salmeron might have used the air freshener to mask the smell of alcohol or narcotics in the car. So, while Freeman was completing the citation and before checking the status of Salmeron's license, he asked Salmeron for

---

[1] *Taylor v. State*, 263 Ga. App. 420, 422 (2) (587 SE2d 791) (2003).

consent to search the car. Salmeron acquiesced, and Freeman began searching the car. One of the rear seats in the Malibu was tilted as though it was not fastened properly. Freeman pulled the seat out and discovered two kilograms of cocaine. An additional kilogram of cocaine was subsequently discovered elsewhere in the car.

Salmeron moved to exclude the cocaine evidence, asserting that Freeman improperly expanded the traffic stop. Salmeron also argued that he was unable to consent because he does not speak English and did not understand Freeman's request. The trial court denied the motion, finding, inter alia, that Freeman asked for permission to search the car while Salmeron was still validly detained for the traffic infraction. The trial court also found that Freeman obtained consent to search the vehicle. This appeal ensued.

1. On appeal, Salmeron contends the trial court erred in denying his motion to suppress because Freeman unlawfully expanded the traffic stop without reasonable suspicion of criminal activity. Under Salmeron's version of the facts, Freeman asked for consent to search *after* issuing the traffic citation and thus impermissibly expanded the traffic stop. He bases this argument on Freeman's testimony that he "pulled [Salmeron] straight out of the car, asked him where he was coming from while writing him a citation, then . . . asked for consent to search."

However, this one statement cannot be viewed in a vacuum. Freeman made this statement in response to a question about how much time passed before Salmeron consented to the search.[2] Freeman was merely recounting what had transpired in the context of figuring out how long it might have taken. Prior to making this statement, Freeman testified unequivocally that he asked for consent to search before completing the traffic citation and obtaining information on the status of Salmeron's license. The trial court found that consent was obtained during the traffic stop rather than afterward, which is permissible.[3] Thus, Salmeron's argument that the traffic stop was unlawfully expanded is not well founded.[4]

2. In a related claim, Salmeron contends that he did not give valid consent for the search. In his motion to suppress, Salmeron noted that his native language is Spanish, not English. And, during the hearing on the motion to suppress, Salmeron's attorney argued that Salmeron "didn't really understand what [Freeman] was saying" because he "has very little command of the English language." On

---

[2] Freeman estimated that only a "couple of minutes" passed before he made his request to search.

[3] See *Harris v. State*, 269 Ga. App. 48, 50-51 (603 SE2d 476) (2004).

[4] See id.; *State v. Williams*, 264 Ga. App. 199, 203-204 (590 SE2d 151) (2003); *Evans v. State*, 262 Ga. App. 712, 715 (1) (586 SE2d 400) (2003).

appeal, Salmeron contends that the trial court never ruled on whether he understood English or whether he consented to the search. Salmeron implies that, given the language barrier, there is no evidence that he consented to the search. We disagree.

"When the trial court considers conflicting evidence, the court's findings are analogous to a jury verdict and should not be disturbed when there is any evidence to support those findings."[5] Here, the evidence was in conflict regarding whether Salmeron understood English. Although Salmeron testified that he spoke little English and had difficulty understanding Freeman, Freeman testified that he carried on a conversation with Salmeron, who spoke English well. Indeed, the record shows that Salmeron not only provided his license and proof of insurance in response to Freeman's request, but also told Freeman that he had been visiting family in Atlanta, where he had been for a few days. Thus, the record contains evidence that Salmeron spoke English reasonably well, which supports a finding that he validly consented to the search.

In its order, the trial court did not expressly find that Salmeron spoke English. This is likely because the thrust of Salmeron's argument below was that Freeman unlawfully expanded the traffic stop, not that Salmeron spoke little English. However, the trial court stated on the record that Freeman asked for consent to search. Also, it found in its order that "the total time from [the] stop *until receiving consent to search* was between three and five minutes."[6] In so doing, the trial court clearly rejected Salmeron's argument that he was unable to understand Freeman. And, given the conflicting evidence, the trial court was authorized to conclude that Salmeron understood English well enough to comprehend Freeman's request and to validly consent to the search of his car.[7]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED APRIL 20, 2005 — 

*Sexton & Morris, Ricky W. Morris, Jr., Joseph S. Key*, for appellant.

---

[5] *Lopez v. State*, 267 Ga. App. 532, 537 (5) (601 SE2d 116) (2004).

[6] (Emphasis supplied.)

[7] Salmeron also calls Freeman's credibility into question. Apparently, the video recorder in Freeman's patrol car was not functioning on the day of the arrest. Salmeron implies that the absence of any audio or video evidence to corroborate Freeman's testimony renders it untrustworthy. The trial court apparently rejected this argument. As it is axiomatic that the trial court is charged with assessing the credibility of witnesses, this argument presents no basis for reversal. See *Crawford-Thomas v. State*, 266 Ga. App. 606 (597 SE2d 635) (2004) ("We . . . accept the trial court's decisions as to the credibility of witnesses unless clearly erroneous.").

*Tommy K. Floyd, District Attorney, Blair D. Mahaffey, Assistant District Attorney*, for appellee.