## S05G1394. SALMERON v. THE STATE.
### (632 SE2d 645)

CARLEY, Justice.

An officer observed Omar Salmeron driving too closely behind another vehicle, and also noticed that one of the brake lights on Salmeron's car was not functioning. The officer initiated a traffic stop and began to write a citation. Having detected a heavy odor of air freshener in the interior of the automobile, the officer suspected that Salmeron might have used it to mask the presence of alcohol or narcotics. He asked for consent to search the vehicle, and Salmeron agreed. One of the rear seats was not fastened properly and, when the officer removed it, two kilograms of cocaine were exposed. Subsequently, another kilogram of cocaine was discovered in the car. The grand jury indicted Salmeron for trafficking in the contraband. He filed a pre-trial motion to suppress, which the trial court denied. At the conclusion of a bench trial, the trial court found Salmeron guilty. On appeal, the Court of Appeals upheld the trial court's denial of Salmeron's motion to suppress, and affirmed his conviction. *Salmeron v. State*, 273 Ga. App. 55 (614 SE2d 177) (2005). We granted certiorari to determine whether the Court of Appeals erred by holding

that law enforcement did not violate the Fourth Amendment during the traffic stop by asking Salmeron for consent to search.

1. The Fourth Amendment is not violated when, during the course of a valid traffic stop, an officer questions the driver or occupants of a vehicle and requests consent to conduct a search. The Supreme Court of the United States has

"held repeatedly that mere police questioning does not constitute a seizure." [Cits.] "(E)ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." [Cit.] . . . [Unless] the detention was prolonged by the questioning, there [is] no additional seizure within the meaning of the Fourth Amendment.

*Muehler v. Mena*, 544 U. S. 93 (125 SC 1465, 161 LE2d 299) (2005). Therefore, the dispositive factor in this case is not the nature or subject of the officer's questioning, but whether that questioning took place during Salmeron's otherwise lawful detention for committing the traffic violations in the officer's presence. If a driver is questioned and gives consent while he is being lawfully detained during a traffic stop, there is no Fourth Amendment violation. *Harris v. State*, 269 Ga. App. 48 (603 SE2d 476) (2004). However, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U. S. 405, 407 (125 SC 834, 160 LE2d 842) (2005).

"(T)he officer's purpose in an ordinary traffic stop is to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with the intent to issue a citation or warning. Once the purpose of that stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention. [Cit.]" [Cits.]

*Daniel v. State*, 277 Ga. 840, 841 (1) (597 SE2d 116) (2004).

Salmeron asserts that his detention was prolonged when the officer asked him to get out of the car. The officer testified that he made that request for reasons of safety. "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U. S. 106, 111, fn. 6 (98 SC 330, 54 LE2d

331) (1977). Thus, ordering Salmeron from the car was an extension of the constitutionally valid detention resulting from the traffic stop.

After Salmeron complied with the officer's directive, they stood at the rear of Salmeron's car,

> and [the officer] began filling out the citation. While writing the citation, [the officer] engaged in "some small talk" with Salmeron, asking him about his travel plans. . . . [W]hile [he] was completing the citation and before checking the status of Salmeron's license, he asked Salmeron for consent to search the car.

*Salmeron v. State*, supra at 55-56. On this evidence, the questioning and request for consent to search occurred before the purpose of the traffic stop was fulfilled. " '[A]n officer conducting a routine traffic stop may request and examine a driver's license and vehicle registration and run a computer check on the documents.' [Cit.]" *Harris v. State*, supra at 50.

> [I]t does not unreasonably expand the scope or duration of a valid traffic stop for an officer to prolong the stop to immediately investigate and determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration. [Cits.]

*State v. Williams*, 264 Ga. App. 199, 202 (590 SE2d 151) (2003). As recognized by the Court of Appeals, the record in this case shows that the officer

> testified unequivocally that he asked for consent to search before completing the traffic citation and obtaining information on the status of Salmeron's license. The trial court found that consent was obtained during the traffic stop rather than afterward, which is permissible. [Cit.] Thus, Salmeron's argument that the traffic stop was unlawfully expanded is not well founded. [Cits.]

*Salmeron v. State*, supra at 56 (1). The dissent correctly points out that, in *Daniel v. State*, supra at 841-842 (1) this Court held

> that a law enforcement officer's continued questioning of a vehicle's driver and passengers outside the scope of a valid traffic stop passes muster under the Fourth Amendment

either when the officer has a reasonable articulable suspicion of other illegal activity or when the traffic stop has de-escalated into a consensual encounter.

The dissent then states that

[t]oday, this reasonable standard [of *Daniel*] is effectively rendered irrelevant, replaced with a meaningless standard that allows any and all manner of interrogation, unrelated to the initial purpose of the traffic stop, so long as the questioning does not prolong the duration of the traffic stop. Dissent, p. 739.

What the dissent fails to acknowledge, however, is that the standard it dismisses as "meaningless" is one which, subsequent to *Daniel*, the Supreme Court of the United States adopted in *Muehler v. Mena*, supra: "'[M]ere police questioning does not constitute a seizure.' [Cits.] . . . [Unless] the detention was prolonged by the questioning, there [is] no additional seizure within the meaning of the Fourth Amendment." Obviously, *Daniel* is not viable Fourth Amendment authority to the extent that it conflicts with a controlling decision of the Supreme Court of the United States.

Although the only decision cited by the dissent is *Daniel*, which was a Fourth Amendment case, it ultimately invokes the Georgia Constitution for the proposition that this state's citizens are provided protection "from any interrogation beyond the scope of the initial traffic stop unless the officer has a reasonable articulable suspicion of other illegal activity or the stop has devolved into a consensual encounter." Dissent, p. 741. However, the dissent does not cite any authority which holds that the Georgia Constitution gives greater search and seizure rights and protection than the United States Constitution. Moreover, our state constitution, like its federal counterpart, protects against "unreasonable" searches and seizures. The dissent does not attempt to explain how mere extraneous questioning, which does not have the effect of prolonging an already valid seizure for a traffic offense, can itself constitute an independent unreasonable seizure of the traffic offender. A valid ongoing seizure is not rendered "unreasonable" simply because, during its course, certain unrelated questions, which the detainee is free to decline to answer, are posed to him or her. In any event, Salmeron does not invoke his rights under the Georgia Constitution in this Court and, when this Court granted his application for certiorari, we stated the question to be considered as whether the Court of Appeals correctly held that law enforcement did not violate the Fourth Amendment during the traffic stop by asking for Salmeron's consent to search. As

to that issue, the Court of Appeals did not err, because the questioning did not prolong the valid traffic stop. *Muehler v. Mena*, supra.

2. Salmeron also asserts that his consent was not voluntary, because his driver's license was in the possession of the officer at the time consent was requested and given. However, this contention confuses the lawful detention of Salmeron's person with his constitutional right to refuse to consent to a search of his vehicle. As discussed in Division 1, he was not free to go because, at the time his consent was requested, the traffic stop was ongoing. Insofar as his car is concerned, however, there is no evidence that the officer coerced or tricked him into agreeing to a search.

In the trial court and the Court of Appeals, Salmeron challenged the validity of his consent on the basis of his lack of proficiency in English. With regard to that contention, "the record contains evidence that [he] spoke English reasonably well, which supports a finding that he validly consented to the search." *Salmeron v. State*, supra at 57 (2). Accordingly, as to this ground, the Court of Appeals also correctly affirmed the trial court's denial of the motion to suppress.

*Judgment affirmed. All the Justices concur, except Sears, C. J., Hunstein, P. J., and Benham, J., who dissent.*

SEARS, Chief Justice, dissenting.

In *Daniel v. State*, this court held that the "questioning of a vehicle's drivers and passengers outside the scope of a valid traffic stop passes muster under the Fourth Amendment when the officer has a reasonable articulable suspicion of other illegal activity or where the traffic stop has de-escalated into a consensual encounter."[1] Today, this reasonable standard is effectively rendered irrelevant, replaced with a meaningless standard that allows any and all manner of interrogation, unrelated to the initial purpose of the traffic stop, so long as the questioning does not prolong the duration of the traffic stop. As the type of interrogation that occurred in this case will never require more than a few seconds, and the opportunities to extend the time for a traffic stop are seemingly endless, the result is carte blanche authority to interrogate any citizen for any purpose whether related to the scope of the initial traffic stop or not.

Traffic stops are inherently time-consuming and coercive events providing ample opportunity for interrogations. Most citizens naturally feel compelled to submit to any request from a police officer who has already seized them for some other legal violation. As the majority notes, we already recognize that it does not unreasonably

[1] 277 Ga. 840, 841-842 (597 SE2d 116) (2004).

prolong the scope or duration of a traffic stop to run a computer check on the citizen's driver's license, insurance, and vehicle registration. As we continue to develop further technological advances, other "routine" checks will undoubtedly become standard practice. And while the citizen with the broken tail-light waits for the completion of the exhaustive background search, he can now be legally subjected to questioning on any subject for any reason.

"It is a well-recognized principle that a state court is free to interpret its state constitution in any way that does not violate principles of federal law, and thereby grant individuals more rights than those provided by the U. S. Constitution."[2] Contrary to the majority's deferral to the U. S. Supreme Court, "[f]ederal constitutional standards represent the minimum, not the maximum, protection that this State must afford its citizens."[3] Being subjected to any and all manner of probing interrogation, when that interrogation is entirely unrelated to the purposes of the initial seizure and is based on no articulable suspicion, constitutes an independent and unreasonable seizure and should be prohibited under the Georgia Constitution.

Under the majority's approach to the protection of civil liberties, however, the continued erosion of our constitutional right to be free from unreasonable search and seizure is not hard to imagine. By sanctioning the rule that "anything goes" within the nebulous time frame for a traffic stop, we render the well-reasoned *Daniel* standard irrelevant, encourage the adoption of probing interrogation as standard practice, and contribute to the erosion of the civil liberties and protections provided under the Georgia and United States Constitutions.

Furthermore, cloaking the erosion of our citizens' rights in a seemingly reasonable, but altogether feckless legal standard, breeds contempt for the rule of law and does a disservice to the ends of liberty and justice.

---

[2] *Powell v. State*, 270 Ga. 327, 331, n. 3 (510 SE2d 18) (1998); see also *Green v. State*, 260 Ga. 625, 627 (398 SE2d 360) (1990) (Georgia Constitution provides broader protection than U. S. Constitution for right against self-incrimination); *Fleming v. Zant*, 259 Ga. 687, 690 (386 SE2d 339) (1989) (Georgia Constitution provides greater protection against cruel and unusual punishment than U. S. Constitution); *Colonial Pipeline Co. v. Brown*, 258 Ga. 115 (3) (365 SE2d 827) (1998) (Georgia Constitution provides greater protection against excessive fines and forfeitures than U. S. Constitution); *Grissom v. Gleason*, 262 Ga. 374, n. 1 (418 SE2d 27) (1992) (Georgia Constitution's equal protection provision may provide greater rights than U. S. Constitution).

[3] *Fleming*, 259 Ga. at 690.

Accordingly, I would hold that the Georgia Constitution[4] protects our citizens from any interrogation beyond the scope of the initial traffic stop unless the officer has a reasonable articulable suspicion of other illegal activity or the stop has devolved into a consensual encounter.[5]

I am authorized to state that Presiding Justice Hunstein and Justice Benham join in this dissent.

DECIDED JULY 13, 2006.

*Ricky W. Morris, Jr., Sexton, Key & Hendrix, Joseph S. Key*, for appellant.

*Tommy K. Floyd, District Attorney, Blair D. Mahaffey, Assistant District Attorney*, for appellee.

---

[4] Ga. Const., Art. I, Sec. I, Par. XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated.").

[5] Contrary to the majority's assertion, the protections afforded under the Georgia Constitution are properly at issue in this appeal. Salmeron raised the issue in his motion to suppress filed in the trial court, as well as multiple times during the hearing on that motion to suppress. Although Salmeron dedicated most of his brief to the specific question this Court certified to the parties, which was narrowly tailored to the U. S. Constitution, Salmeron does explicitly argue in his brief that his consent "was the product of an illegal detention in violation of Salmeron's rights . . . *under Article I, Section I, Paragraph XIII of the Georgia Constitution*." Appellant's brief, p. 13. Accordingly, the majority is wrong to state that Salmeron did not invoke the protections under the Georgia Constitution in this Court. Moreover, this Court is not limited in its ruling by the specific certiorari question addressed to the parties. See *Security Life Ins. Co. &c. v. St. Paul Fire & Marine Ins. Co.*, 278 Ga. 800, 801 (606 SE2d 855) (2004) (the posing of certiorari questions in no way limits this Court in its decision-making authority).