## A08A1708. APONTE v. THE STATE.
(676 SE2d 279)

BARNES, Judge.

Angel Miciades Aponte appeals his conviction, after a bench trial, for trafficking in cocaine. He was sentenced to the mandatory minimum of 25 years in confinement. Before trial Aponte moved to suppress the evidence obtained as a result of his traffic stop, and after that motion was denied, Aponte stipulated to the facts presented at the motion hearing.

He now argues on appeal that the trial court erred by denying his motion to suppress because the initial traffic stop was invalid and his continued unrelated detention also rendered the subsequent search invalid. We disagree, and affirm his conviction.

1. Relying upon the arresting officer's testimony in which the officer first said he stopped Aponte because his license tag was registered to a different vehicle but then admitted on cross-examination that he did not know about the tag until after he stopped the car, Aponte contends the initial stop was illegal. He contends that the fact that the computer search first revealed no information on the tag was an insufficient reason to warrant a traffic stop. The State argues, however, that the officer stopped Aponte for a traffic violation — failure to use turn signals — but the defendant responds that the officer did not testify he stopped Aponte for a traffic violation; he testified that he stopped him because the tag belonged to another car, which was false.

When this court

> reviews a trial court's order concerning a motion to suppress evidence, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). The reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment and must not disturb the trial court's ruling if there is any evidence to support it. Id. "Further, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial." *Whitehead v. State*, 258 Ga. App. 271, 273 (1) (574 SE2d 351) (2002).

*Harris v. State*, 269 Ga. App. 48, 49 (603 SE2d 476) (2004). Our Supreme Court has held that

> [t]he Fourth Amendment protects against unreasonable searches and seizures, including seizures that involve only a

brief detention. Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment.

(Citation and punctuation omitted.) *Daniel v. State*, 277 Ga. 840, 841 (1) (597 SE2d 116) (2004), overruled on other grounds, *Salmeron v. State*, 280 Ga. 735, 737-738 (1) (632 SE2d 645) (2006).

Construed most favorably to upholding the trial court's findings and judgment, the evidence shows that a police officer who was patrolling for burglary suspects and on the lookout for a silver Mercury Town Car observed Aponte driving what appeared to be such a car "at slow speeds, not using any turn signals, going in and out of lanes." The officer tried to check the status of the car's Indiana license tag, but the computer returned no information. The officer watched Aponte pull into a restaurant parking lot "very quick." When the officer circled around the adjacent building, Aponte pulled out to leave and the officer stopped the car. He talked to Aponte and his passenger, checked their drivers' licenses, and ran the tag again. This time he learned that the tag had been issued to a different vehicle.

The officer returned to the car and asked Aponte if he had any drugs or weapons in the car, and then asked for consent to search it. Aponte said yes, and the officer searched the car's interior and trunk. Although he found no contraband, he thought the trunk "looked like it was too high in the back" and might have a hidden compartment.

A third officer, who arrived 40 to 50 minutes after the first search was completed, agreed the trunk did not look normal. He began questioning Aponte, and received consent to search the car again. The officer pulled up the carpet in the trunk and saw fresh Bondo seals around a false compartment. A fourth officer obtained a magnet from Aponte and used it to open a hidden "trapdoor" behind the back seat, finding 29 kilos of cocaine. Aponte appeals the trial court's denial of his motion to suppress.

"The stop in this case was a *Terry* stop. See *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968)." *Stafford v. State*, 284 Ga. 773, 774 (671 SE2d 484) (2009). "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." (Citation and punctuation omitted.) *Terry v. Ohio*, supra, 392 U. S. at 22. Articulable suspicion is "less than probable cause, but greater than mere caprice." *McGaughey v. State*, 222 Ga. App. 477, 479 (474 SE2d 676) (1996). "Whether a given set of facts rises to the level of reasonable,

articulable suspicion of criminal activity is a legal question." *Jones v. State*, 253 Ga. App. 870, 873 (560 SE2d 749) (2002).

Further, the United States Supreme Court has

> recognized the difficulty in defining "the elusive concept of what cause is sufficient to authorize police to stop a person," and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981). "This demand for specificity in the information upon which police action is predicated is the central teaching of [the Supreme Court's] Fourth Amendment jurisprudence." *Terry v. Ohio*, supra, at 21, n. 18.

*Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994). Further, an investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. Considering the totality of the circumstances, the inferences and deductions of a trained officer, drawn from objective observation, must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. *Postell v. State of Ga.*, 264 Ga. 249 (443 SE2d 628) (1994).

Given the officer's knowledge that he was to be on the lookout for a car similar in description to the car Aponte was driving and his observations of Aponte's suspicious driving before the stop, we find that the officer had such a particularized and objective basis for suspecting Aponte of criminal activity. Accordingly, the stop was authorized notwithstanding the officer only learned of the information about the tag after he stopped Aponte.

2. Aponte also contends that even if the stop was valid, his continued detention and questioning unrelated to the reason for his initial stop was illegal. He asserts that the officer "exceeded the permissible bounds of the investigatory stop" by not asking him about the tag being registered to another car but instead asking him about drugs and for consent to search. After this search uncovered nothing out of the ordinary, the officer did not release Aponte but continued to question him. Additional officers were called to the scene, and one asked Aponte for consent to search his car again, which he gave.

The State responds that Aponte was not under arrest until the officers discovered the hidden cocaine. He was not handcuffed, was allowed to walk around the parking lot, could have asked to leave,

and would not have been chased had he run. Further, the State argues, Aponte's Fourth Amendment rights were not violated by asking him if he had drugs or would consent to a search after the officer discovered the tag violation, because the officer would not have allowed Aponte to drive off with the improper tag and would have impounded the car regardless. Finally, the State contends that the improper tag affixed to the same kind of car the officers had been seeking "gave rise to a reasonable articulable suspicion of criminal activity and justified the continued detention and questioning" of Aponte.

We must first note that this was not the typical traffic stop in which a motorist was pulled over for violating, or being suspected of violating, some rule of the road. Instead, we have found that this was a *Terry* stop of a motorist whose car resembled one the police were looking for, and who was driving suspiciously. Therefore, the purpose of this stop was not only to resolve a traffic violation. Even if it had been for that purpose, an officer may continue to detain a driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring.

Additionally, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter. *Daniel v. State*, supra, 277 Ga. at 841-846 (1)-(2).

> The Fourth Amendment is not violated when, during the course of a valid traffic stop, an officer questions the driver or occupants of a vehicle and requests consent to conduct a search. The Supreme Court of the United States has held repeatedly that mere police questioning does not constitute a seizure. Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage. Unless the detention was prolonged by the questioning, there is no additional seizure within the meaning of the Fourth Amendment. *Muehler v. Mena*, 544 U. S. 93 (125 SC 1465, 161 LE2d 299) (2005). Therefore, the dispositive factor in this case is not the nature or subject of the officer's questioning, but whether that questioning took place during [Aponte's] otherwise lawful detention. . . . If a driver is questioned and gives consent while he is being lawfully detained during a traffic stop, there is no Fourth Amendment violation. *Harris v. State*, 269 Ga. App. 48 (603 SE2d 476) (2004).

(Citation and punctuation omitted.) *Salmeron v. State*, supra, 280

Ga. at 736 (1). "A valid ongoing seizure is not rendered 'unreasonable' simply because, during its course, certain unrelated questions, which the detainee is free to decline to answer, are posed to him or her." Id. at 739.

Here, the evidence shows that after stopping Aponte, the officer learned of the problems with the tag, giving the officer additional reasonable particularized suspicion of illegal activity justifying the additional questions. We do not find that the officers' questioning "exceeded the permissible bounds of the investigatory stop."

Accordingly, this enumeration of error is also without merit.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 20, 2009.

*Bruce S. Harvey*, for appellant.

*Daniel J. Porter, District Attorney, John A. Warr, Assistant District Attorney*, for appellee.