A09A0287, A09A0288. IN THE INTEREST OF J. T., a child
(two cases).
(678 SE2d 111)

BERNES, Judge.

After appellant J. T., a 16-year-old juvenile, confessed his involvement in numerous residential burglaries, the state filed delinquency petitions against him alleging probation violations and the crimes of burglary and theft by receiving. J. T. moved to suppress the physical and testimonial evidence against him on the ground that the evidence was the product of an illegal detention. The juvenile court denied the motion and subsequently adjudicated J. T. delinquent.

J. T. now appeals the denial of his motion to suppress. We find no error and affirm.

> On appeal from a delinquency adjudication, we view the evidence in a light most favorable to support the juvenile court's findings and judgment. Because it is the juvenile court's role to resolve conflicts in the evidence, we do not weigh the evidence, but merely evaluate its sufficiency.

(Punctuation and footnotes omitted.) *In the Interest of L. A.*, 292 Ga. App. 101 (663 SE2d 420) (2008).

So viewed, the evidence presented at the hearing showed that one morning between 9:00 a.m. and 10:00 a.m., a residence located on Proctor Street in Fulton County was burglarized. A witness reported seeing four young males exiting the back of the house carrying numerous items. The witness racially identified the perpetrators and further described them as having slim builds and low haircuts. Law enforcement officers, who were already on high alert due to a rash of recent burglaries in the area, issued a "be on the lookout" for individuals matching the description given by the witness.

The following day, around 9:30 a.m., two police officers responded to a call from a road unit that reported four young males, matching the description given by the witness the previous day, had been spotted in the neighborhood of the burglarized home. The four males were "canvassing the area, prowling and looking inside homes." Once the officers arrived in the neighborhood, they observed J. T., a juvenile whom they immediately recognized from previous encounters,[1] walking in the middle of the street with his cousin, 17-year-old Darius Tabb, 16-year-old R. R., and 14-year-old T. R. The four males were located in an area approximately two blocks from the Proctor Street burglary.

The officers pulled their vehicle behind the suspects, exited the car, and approached them. Because the officers had previously encountered Tabb, they knew he was not a juvenile and consequently separated him from the others. One of the officers remained with the juveniles and questioned them about why they were not in school. The other officer questioned Tabb about why he was hanging out with juveniles who were supposed to be in school. The officer also questioned Tabb about the Proctor Street burglary. Tabb confessed

---

[1] One of the officers was a school resource officer at J. T.'s school and testified that law enforcement officers stopped J. T. "constantly" for truancy, including an incident two weeks prior to the day in question.

to his involvement in the burglary and implicated J. T., R. R., and T. R.

The officers contacted the juveniles' parents and transported them and Tabb to the police precinct. Once they arrived at the precinct, J. T. was advised of the *Miranda* warnings in the presence of his mother. J. T. and his mother executed a written waiver of counsel and agreed to speak to the police. J. T. confessed to committing the Proctor Street burglary, as well as several other burglaries.

1. J. T. argues that the officers' initial stop of J. T. and the other males was unlawful because the officers lacked a reasonable articulable suspicion of criminal activity. We disagree.

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. See also Ga. Const. Art. I, Sec. I, Par. XIII. But a brief investigative stop of a person made by a law enforcement officer with "a particularized and objective basis for suspecting the person is involved in criminal activity" is neither unreasonable nor unlawful. (Citation omitted.) *In the Interest of E. C.*, 292 Ga. App. 798, 800 (665 SE2d 896) (2008). So long as a police officer has a reasonable suspicion that a person is, or is about to be, engaged in criminal activity, an investigative stop does not violate the Fourth Amendment. *Taylor v. State*, 296 Ga. App. 481 (675 SE2d 504) (2009). See *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

> Momentary detention and questioning are permissible if based upon specific and articulable facts, which, taken together with rational inferences from those facts, justify a reasonable scope of inquiry not based on mere inclination, caprice or harassment. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest, to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

(Citation and punctuation omitted.) *State v. Turntime*, 170 Ga. App. 740, 742 (1) (318 SE2d 157) (1984).

Here, the officers' stop of J. T. was authorized for more than one reason. First, because of their prior contact with J. T., the officers knew that J. T. was enrolled in and supposed to be attending school on the date and time in question. The officers therefore had a

reasonable, particularized and objective basis for suspecting that J. T. was truant and were consequently justified in stopping him in order to determine why he was not attending school. See *In the Interest of E. C.*, 292 Ga. App. at 799-800. See also OCGA § 20-2-690.1 (e) (providing that an unemancipated minor between the ages of 16 and 18 who has not completed high school must attend school absent written permission from his or her parent to withdraw).

Second, the officers had a reasonable suspicion, based on specific and articulable facts, that J. T. and his cohorts were engaged in or about to be engaged in the commission of a burglary. Not only did the four males match the physical description provided by the witness to the Proctor Street burglary which had been committed just one day earlier, but on the day of the stop, they were seen "canvassing [a nearby] area, prowling and looking inside homes" at approximately the same hour the Proctor Street burglary had occurred, a time when they were otherwise supposed to be attending school. The officers' brief stop and detention of J. T. under these circumstances was not unreasonable. See *Aponte v. State*, 296 Ga. App. 778 (1) (676 SE2d 279) (2009); *In the Interest of B. K. M.*, 247 Ga. App. 588, 589-591 (544 SE2d 504) (2001); *Turntime*, 170 Ga. App. at 742-743 (1).

2. J. T. further contends that he was illegally detained at the precinct due to the officers' alleged violation of OCGA § 15-11-47 (a) (1).[2] J. T. did not raise this argument before the juvenile court and his failure to do so waives consideration of this issue on appeal. See *Williams v. State*, 270 Ga. App. 480, 481-482 (606 SE2d 671) (2004).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED APRIL 29, 2009.

*Phillip Jackson*, for appellant.

*Paul L. Howard, Jr., District Attorney, Todd H. Ashley, Stephany J. Luttrell, Kathleen A. Giroux, Assistant District Attorneys*, for appellee.

---

[2] OCGA § 15-11-47 (a) (1) provides:

A person taking a child into custody, with all reasonable speed and without first taking the child elsewhere, shall ... [f]orthwith release without bond the child to the child's parents, guardian, or other custodian upon their promise to bring the child before the court when requested by the court.