143 Ga. App. 887 (1977)
240 S.E.2d 165
In re: P. S. C. et al.
54148.
Court of Appeals of Georgia.
Submitted June 27, 1977.
Decided October 28, 1977.
Rehearing Denied November 16, 1977.
*890 Russell T. Quarterman, for appellants.
James D. Hudson, Arthur K. Bolton, Attorney General, Carol Atha Cosgrove, Assistant Attorney General, for appellees.
SMITH, Judge.
The issues presented here are whether a juvenile court judge, having issued an order terminating parental rights, has authority to grant a rehearing on the matter, and, if so, whether the rehearing was properly granted by an ex parte order in this case. We conclude both in the affirmative, and reverse a later judgment which vacated the order granting rehearing.
The appellants, parents of two minor children, had their parental rights in those children permanently terminated following a hearing in the Madison County Juvenile Court. The court's order, dated May 7, 1976, awarded custody of the children to the Department of Human Resources (DHR). Within thirty days, and during the statutory appeal period, the parents filed a petition seeking a rehearing. The parents contended that in the six month interval since the original hearing they had improved their living situation so that the children, if they were able to remain at home, would no longer be deprived. On June 3, 1976, the judge granted a rehearing, then disqualified himself from further proceedings in the case. In early December the DHR moved the court to vacate the order granting a rehearing. On March 3, 1977, the juvenile court, with a different judge presiding, *888 vacated the rehearing order on the grounds that the order was issued ex parte and the DHR was not provided notice of the motion.
1. The DHR first contends that in no instance can a juvenile court reverse itself after entering an order terminating parental rights. It argues that although the court can reverse itself in most other types of cases before it, the termination of parental rights is permanent and a child, for its best interests, must not have its custodianship held in limbo. A juvenile court may well consider it to be more in the child's interest to have a parental rights termination reconsidered than to have the certainty of a permanent termination. At any rate, such a policy argument is one for the legislature, because the legislature has provided authority and procedure for juvenile courts to modify, change, or vacate orders (Code § 24A-2801), and it even has excluded some types of cases from the procedure. See Code § 24A-2801 (b). It did not, however, exempt termination of parental rights cases from the reconsideration procedures, and we will not presume that it meant to do so.
Both high courts of this state have recognized the gravity of proceedings to terminate a parent's rights to raise his offspring. See R. C. N. v. State of Ga., 141 Ga. App. 490, 491 (233 SE2d 866); and Nix v. Dept. of Human Resources, 236 Ga. 794, 795 (225 SE2d 306). Likewise, the legislature has declared that the Juvenile Court Code should be construed toward the end of providing for a child's welfare, "preferably in his own home." Code § 24A-101. To this end, we will not declare orders terminating parental rights, removing the child permanently from his own home, to be beyond the reach of the court issuing the order. To the contrary, the juvenile court judge who has second thoughts about such an action should, under the present Code, take whatever steps necessary to ensure the correctness of his action.
2. The question remains whether the order granting a rehearing, though issued ex parte, is valid. The record does not reveal that any hearing was held on the motion to grant a rehearing, the order states simply, "The motion ... having been read and considered it is hereby ordered: (a) That said matter shall come on for rehearing." The DHR *889 claims the order granting a rehearing was invalid because no hearing was held prior to issuing the order. We disagree, because no hearing was required.
"`A trial judge has the power during the same term of court at which a judgment is rendered to revise, correct, revoke, modify, or vacate such judgment, even upon his own motion, for the purpose of promoting justice and in the exercise of sound legal discretion.' [Cits.] This `rule was never intended to authorize the judge to set aside a judgment duly and regularly entered unless some meritorious reason is given therefore.' [Cit.] `This inherent power of the court extends to all orders and judgments save those which are founded upon verdicts.' [Cit.] ... It [is] not necessary to give notice to anyone. [Cits.]" Pekor v. Clark, 236 Ga. 457, 458 (224 SE2d 30). This well-recognized principle is not strictly applicable to a juvenile court's judgments, because the inherent power to modify extends only for the term in which the judgment was entered, and juvenile courts do not sit in terms. However, it is clear that a juvenile court retains its inherent power to modify its own judgments at least for the length of the statutory appeal period. The juvenile court judge, during this period, had the power to revoke, even reverse, its order; it logically follows that it had authority to take the lesser step of ordering a rehearing to determine the correctness of its order. The grounds for rehearing stated in the motion, and upon which the order for rehearing was issued, were that circumstances had changed and the best interest of the child might not be served by terminating parental rights. The Juvenile Court Code specifically provides that these grounds can serve as the basis for modifying a judgment (Code § 24A-2801 (b)), so we conclude that the order was founded on meritorious reasons and was for the purpose of promoting justice. The order granting rehearing should not have been set aside for the reasons stated in the March 3, 1977 order, and that judgment is reversed.
Judgment reversed. Bell, C. J., and McMurray, J., concur.