**FOURTH DIVISION**
**DILLARD, P. J.,**
**RAY and SELF, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 5, 2017**

# In the Court of Appeals of Georgia

A17A0587. IN THE INTEREST OF D. B., a child.

DILLARD, Presiding Judge.

Following a hearing and the entry of an admission with a negotiated disposition, the Juvenile Court of Richmond County adjudicated D. B. delinquent for carrying a weapon within a designated school safety zone, possessing a handgun as a person under the age of 18 years, and committing criminal trespass. The juvenile court determined that D. B. should be designated as a Class-B felon under OCGA § 15-11-602 for carrying a weapon in a school safety zone and, accordingly, ordered him to serve six months in a youth development campus, committing him to the Department of Juvenile Justice for a total of eighteen months. D. B. filed a motion to vacate what he argued was a void disposition, contending that he did not qualify as a Class-B designated felon. The juvenile court agreed and amended the disposition.

The State now appeals from the juvenile court's amended disposition, arguing that (1) the court lacked jurisdiction to modify its sentence after D. B. was committed to the custody of the Department of Juvenile Justice, and (2) D. B. *did* qualify as a Class-B designated felon. For the reasons set forth *infra*, we reverse.

Viewed in the light most favorable to the juvenile court's findings and judgment,[1] the record reflects that on March 29, 2016, an administrator at D. B.'s high school received information that another student might be in possession of marijuana, which prompted a search of that student's locker. Officials found D. B.'s book bag in the locker and, within the book bag, a .38 Smith & Wesson revolver containing five rounds of ammunition.[2] D. B. was then called to the school's office, but before arriving there he saw law enforcement, took off running, and kicked a hole through

---

[1] *See In the Interest of K. A. F.*, 310 Ga. App. 142, 142 (712 SE2d 138) (2011) ("On appeal from a delinquency adjudication, we view the evidence in a light most favorable to support the juvenile court's findings and judgment. Because it is the juvenile court's role to resolve conflicts in the evidence, we do not weigh the evidence, but merely evaluate its sufficiency." (punctuation omitted)); *In the Interest of J. T.*, 297 Ga. App. 636, 637 (678 SE2d 111) (2009) (same). We note that a transcript of proceedings was neither requested nor included in the appellate record and, thus, the foregoing facts—which neither side disputes on appeal—are taken from the trial court's order of disposition.

[2] Surveillance video confirmed that D. B. had placed the book bag in the locker.

a wall. But in short order, D. B. was detained and questioned. After waiving his *Miranda* rights in writing, D. B. admitted to bringing the gun to school, stating that he had done so "for protection."

D. B. was later charged by delinquency petition with (1) carrying weapons within a school safety zone for "hav[ing] under his control, a weapon, to-wit: a certain handgun, while on school property . . . ."; (2) possessing a handgun as a person under 18 years of age; (3) committing criminal trespass by kicking the wall of the school, causing damage; and (4) disrupting a public school. The State further alleged in the petition that the charges against D. B., if proven, "could constitute a Class (B) designated felony according to [OCGA] § 15-11-2 et seq." As noted by the juvenile court in its disposition order, prior to the adjudicatory hearing, D. B. "entered an admission with a negotiated . . . disposition in this case that was accepted by [the juvenile] court." Thus, he was adjudicated delinquent on the first three charges, with the juvenile court concluding that the first count (carrying a weapon in a school safety zone) qualified as Class-B designated felony. The juvenile court later modified this conclusion and D. B.'s disposition after D. B. argued that his disposition was void because he did *not* qualify as a Class-B designated felon. This appeal by the State follows the court's modification.

3

At the outset, we reject D. B.'s argument that this appeal should be dismissed because the State lacked authority to appeal under OCGA § 5-7-1. Accordingly, we deny his separately filed motion to dismiss. Although the State filed its appeal under OCGA § 5-7-1 (a) (6), which permits the State to appeal "[f]rom an order, decision, or judgment of a court where the court does not have jurisdiction or the order is otherwise void under the Constitution or laws of this state,"[3] and we determine *infra* that the juvenile court *did* have jurisdiction, the State was nevertheless authorized to an appeal under OCGA § 5-7-1 (a) (2), which permits appeals "[f]rom an order, decision, or judgment arresting judgment of conviction or adjudication of delinquency upon legal grounds[.]"[4]

---

[3] OCGA § 5-7-1 (a) (6).

[4] OCGA § 5-7-1 (a) (2); *see State v. Freeman*, 272 Ga. 813, 814-15 (1) (537 SE2d 92) (2000) ("An 'arrest of judgment' is the 'staying of a judgment after its entry; especially a court's refusal to render or enforce a judgment because of a defect apparent in the record.' The record to be considered on a motion in arrest of judgment in a criminal case is limited to the indictment, plea, verdict, and judgment. In this case, the record shows that the jury returned a verdict finding [the defendant] guilty of the offenses of murder and hindering apprehension involving the same victim. The trial court concluded as a matter of law that the verdicts were mutually exclusive and, therefore, vacated the felony-murder conviction and sentence. A review of the substance of that order, rather than its nomenclature, shows that the trial court set aside the murder conviction on legal grounds based on a defect appearing on the face of the record. Because the trial court's order is, in effect, an order in arrest of judgment, the [S]tate is entitled to file a direct appeal under OCGA § 5-7-1."

1. The State argues that the court lacked jurisdiction to modify D. B.'s disposition after he was committed to the custody of the Department of Juvenile Justice. We disagree with the State's assertion that a juvenile court *never* has jurisdiction to modify a disposition on motion of a party after a juvenile has been committed to the Department's custody.[5]

(footnotes omitted)); *see also Boney v. Tims*, 254 Ga. 664, 664 (333 SE2d 592) (1985) (reviewing State's appeal of habeas corpus proceeding in which court declared defendant's sentences null and void and ordered resentencing); *State v. Hammons*, 252 Ga. App. 226, 226, 227 (1) (555 SE2d 890) (2001) ("[The defendant] voluntarily entered a guilty plea to a felony offense . . . and received a 15-year prison sentence. After serving about nine years of that felony sentence, [the defendant] sought and obtained misdemeanor punishment. The State then filed this appeal. . . . Because the order being appealed effectively sets aside a felony conviction based on legal grounds appearing on the face of the record, the order may be fairly viewed as an arrest in judgment appealable under OCGA § 5-7-1 (a) (2)."); *State v. Smith*, 193 Ga. App. 831, 833 (389 SE2d 547) (1989) (Deen, P.J., concurring specially) ("OCGA § 5-7-1 (2) affords an appeal by the State from an 'order, decision, or judgment arresting judgment of conviction upon legal grounds.' The trial court's improper merger of so many convictions of armed robbery certainly had the legal effect of 'arresting judgment of conviction upon legal grounds.' The State's right to appeal could be sustained on that basis.").

[5] *See generally* OCGA § 15-1-3 (6) (providing that "every court" has the power "[t]o amend and control its processes and orders, so as to make them conformable to law and justice, and to amend its own records, so as to make them conform to the truth"); *In re P. S. C.*, 143 Ga. App. 887, 889 (2) (240 SE2d 165) (1977) ("A trial judge has the power during the same term of court at which a judgment is rendered to revise, correct, revoke, modify, or vacate such judgment, even upon his own motion, for the purpose of promoting justice and in the exercise of sound legal discretion . . . . This well-recognized principle is not strictly applicable to a juvenile

In arguing that the juvenile court lacked jurisdiction, the State relies upon cases decided under our prior Juvenile Code, citing *In the Interest of K. F.*[6] and *In the Interest of S. S.*[7] Those cases relied upon former OCGA § 15-11-40 (b), which provided that "[a]n order of the court may also be changed, modified, or vacated on the ground that changed circumstances so require in the best interest of the child, except an order committing a delinquent child to the Department of Juvenile Justice, after the child has been transferred to the physical custody of the Department of Juvenile Justice . . . ."[8]

---

court's judgments, because the inherent power to modify extends only for the term in which the judgment was entered, and juvenile courts do not sit in terms. However, it is clear that a juvenile court retains its inherent power to modify its own judgments . . . ."; *accord In the Interest of K. B.*, 188 Ga. App. 199, 201 (2) (372 SE2d 476) (1988).

[6] 299 Ga. App. 685 (683 SE2d 650) (2009).

[7] 276 Ga. App. 666 (624 SE2d 251) (2005).

[8] *See In the Interest of K. F.*, 299 Ga. App. at 686 (1) (quoting former OCGA § 15-11-40 (b)); *In the Interest of S. S.*, 276 Ga. App. at 667 (citing former OCGA § 15-11-40 (b) when noting that "[a]n order of the juvenile court may be changed, modified, or vacated on the ground that changed circumstances so require in the best interest of the child, except an order committing a delinquent child to the Department may not be changed, modified or vacated after the child has been transferred to the physical custody of the Department"). *See generally In the Interest of P. S.*, 295 Ga. App. 724, 727 (673 SE2d 74) (2009) (rejecting argument that order committing juvenile to Department of Juvenile Justice should be modified based on evidence that

But in 2013, effective January 1, 2014, our General Assembly substantially revised the Juvenile Code,[9] and former OCGA § 15-11-40 (b) was replaced with OCGA § 15-11-32,[10] which provides that "[a]n order of the court may . . . be changed, modified, or vacated on the ground that changed circumstances so require in the best interests of a child except an order of dismissal following a contested adjudicatory hearing[,]"[11] and that "*[e]xcept as otherwise provided in Code Section 15-11-602*, an order committing a child to [the Department of Juvenile Justice (DJJ)] may only be modified after such child has been transferred to DJJ custody upon motion of DJJ."[12] To that end, OCGA § 15-11-602 provides, in relevant part, that,

---

juvenile had improved and essentially been rehabilitated while in restrictive custody because this was an argument based on changed circumstances, and trial court lacked jurisdiction to modify order on such basis after juvenile was transferred to Department's physical custody).

[9] *See* Ga. Laws 2013, Act 127, § 5-1 ("This Act shall become effective on January 1, 2014, and shall apply to all offenses which occur and juvenile proceedings commenced on and after such date.").

[10] We note that OCGA § 15-11-32 was further amended in 2014 to add an additional subsection not relevant to this appeal. *See* Ga. Laws 2014, Act 635, § 1-5 (adding subsection (g), which provides that "[t]his Code section is intended to be retroactive and shall apply to any child who is under the jurisdiction of the court at the time of a hearing, regardless of the date of the original delinquency order").

[11] OCGA § 15-11-32 (b).

[12] OCGA § 15-11-32 (c) (emphasis supplied).

7

[n]otwithstanding Code Section 15-11-32, *DJJ or any party may file a motion with the court* seeking a child's release from placement in a secure residential facility or nonsecure residential facility, an order modifying the court's order requiring placement in a secure residential facility or nonsecure residential facility, or termination of an order of disposition for a child committed for a class A designated felony act or class B designated felony act.[13]

Thus, under our new Juvenile Code, notwithstanding the fact that a child has been committed to the Department of Juvenile Justice's custody, under OCGA § 15-11-602, the juvenile court retains jurisdiction to consider a motion to modify its order when such a motion is filed by either the Department *or any party* under OCGA § 15-11-602.[14] That said, OCGA § 15-11-602 (f) further provides that "[a]ll motions filed under this paragraph shall be accompanied by a written recommendation for release, modification, or termination from a child's DJJ counselor or placement supervisor, filed in the court that committed such child to DJJ, and served on the prosecuting

---

[13] OCGA § 15-11-602 (f) (2) (A) (emphasis supplied).

[14] *See id.*; *see also In the Interest of D. H.*, 332 Ga. App. 274, 277 (1) (a) (772 SE2d 70) (2015) ("Because the record shows that the juvenile court had transferred custody of [the juvenile] to DJJ and that DJJ did not move to modify the commitment order, the juvenile court was authorized to modify that order only pursuant to OCGA § 15-11-602 (2014).").

8

attorney for such jurisdiction."[15] And here, D. B.'s motion was not accompanied by such a recommendation, as required by OCGA § 15-11-602 (f) (2) (b). Moreover, D. B.'s motion also was not based on an allegation of changed circumstances.[16] Instead, D. B.'s motion was made on the assertion that his disposition and resulting commitment to restrictive custody were *void*.

In the context of a criminal conviction, "a *sentence* is void if the court imposes punishment that the law does not allow."[17] And this is true even for defendants who

---

[15] OCGA § 15-11-602 (f) (2) (B); *see also In the Interest of D. H.*, 332 Ga. App. at 277 (1) (a) (holding that juvenile court properly dismissed motion to modify commitment order filed pursuant to OCGA § 15-11-602 (f) (2) (A) when motion was not accompanied by "a written recommendation from [the juvenile's] DJJ counselor or placement supervisor" as required by OCGA § 15-11-602 (f) (2) (B)).

[16] *See* OCGA § 15-11-602 (f) (2) (D) ("A court hearing a motion filed under this paragraph shall determine the disposition of a child based upon a preponderance of the evidence. In determining whether a motion for release from custody, modification of placement in a secure residential facility or nonsecure residential facility, or termination of an order of disposition should be granted or denied due to changed circumstances, the court shall be required to find whether or not such child has been rehabilitated and shall consider and make specific findings of fact as to . . . [specific thereafter enumerated] factors[.]"); *see also* OCGA § 15-11-32 (b) ("An order of the court may . . . be changed, modified, or vacated on the ground that changed circumstances so require in the best interests of a child except an order of dismissal following a contested adjudicatory hearing[.]").

[17] *von Thomas v. State*, 293 Ga. 569, 571 (2) (748 SE2d 446) (2013) (emphasis supplied) (punctuation omitted); *accord Rooney v. State*, 287 Ga. 1, 2 (2) (690 SE2d 804) (2010).

plead guilty because "a defendant who knowingly enters into a plea agreement and accepts the benefit of that bargain does not waive or 'bargain away' the right to challenge an illegal and void sentence."[18] Although we can find no case law directly on point in the context of juvenile-court proceedings (and the parties cite to none), our Supreme Court has recognized that to "allow [a] defendant to serve a sentence for a criminal conviction that has been identified as illegal and void would not comport with fundamental fairness and due process of law."[19] And, thus, a sentencing court has "jurisdiction to vacate a void sentence at any time."[20] Indeed, the only ground for authorizing a trial court to correct a sentence at any time is "that the sentence is void."[21]

---

[18] *Moore v. State*, 293 Ga. 705, 706 (1) (749 SE2d 660) (2013); *see also Humphrey v. State*, 297 Ga. 349, 350 (773 SE2d 760) (2015) ("[A]s we have indicated in a number of cases, the consent of the parties cannot validate a void sentence.").

[19] *Nazario v. State*, 293 Ga. 480, 487 (2) (c) (746 SE2d 109) (2013); *accord Bynes v. State*, 336 Ga. App. 223, 227-28 (2) (784 SE2d 71) (2016).

[20] *von Thomas*, 293 Ga. at 571 (2); *accord Rooney*, 287 Ga. at 2 (2).

[21] *Rooney*, 287 Ga. at 2 (2) (punctuation omitted); *see also Williams v. State*, 271 Ga. 686, 688 (1) (523 SE2d 857) (1999) ("Both this Court and the Court of Appeals have held that, when a sentence is void, a trial court has jurisdiction to resentence the defendant at any time.").

In the context of juvenile-court proceedings, it is true that "an adjudication of delinquency is not a conviction of a crime,"[22] that "[t]he juvenile court cannot find anyone guilty of a crime,"[23] and that "the commitment of a juvenile to any authorized facility is not commitment for conviction of a crime"[24] but is instead "only for rehabilitation or treatment."[25] Nevertheless, we have repeatedly recognized that, even in juvenile-court proceedings, "due process must always be scrupulously adhered to."[26] Accordingly, notwithstanding the distinction between an adjudication of

[22] *K. M. S. v. State*, 129 Ga. App. 683, 684 (200 SE2d 916) (1973); *see* OCGA § 15-11-606 ("An order of disposition or adjudication shall not be a conviction of a crime and shall not impose any civil disability ordinarily resulting from a conviction nor operate to disqualify the child in any civil service application or appointment."); *see also Carrindine v. Richards*, 236 Ga. 283, 284 (223 SE2d 627) (1976) ("Under Georgia law, when a juvenile is adjudicated to be a delinquent by a juvenile court, the adjudication is not regarded as a criminal conviction.").

[23] *K. M. S.*, 129 Ga. App. at 684.

[24] *A. B. W. v. State*, 231 Ga. 699, 701 (II) (203 SE2d 512) (1974); *see also* OCGA § 15-11-606.

[25] *A. B. W.*, 231 Ga. at 701 (II).

[26] *D. P. v. State*, 129 Ga. App. 680, 681 (2) (200 SE2d 499) (1973); *accord In the Interest of F. F.*, 304 Ga. App. 232, 235 (2) (695 SE2d 723) (2010); *In the Interest of B. A. H.*, 198 Ga. App. 713, 714 (1) (402 SE2d 791) (1991); *In the Interest of B. A. P.*, 180 Ga. App. 433, 434 (1) (349 SE2d 218) (1986); *C. L. T. v. State*, 157 Ga. App. 180, 180 (1) (276 SE2d 862) (1981); *see also In the Interest of D. W.*, 232 Ga. App. 777, 779 (1) (b) n.1 (503 SE2d 647) (1998) ("[U]nder principles of due process, a juvenile is entitled to the same protection against unfair surprise and to the

11

delinquency and a sentence imposed upon a convicted defendant, it would be an

affront to a juvenile's due process rights if a juvenile court could improperly commit

a juvenile to restrictive custody[27] but fail to retain jurisdiction to correct what

amounts to a void disposition.[28] Thus, when a juvenile makes a cognizable claim that

his or her disposition was void,[29] in order to comport with fundamental fairness and

---

opportunity to prepare a defense [as an adult who faces criminal charges].").

[27] *See, e.g.*, OCGA § 15-11-601 (a) ("At the conclusion of the disposition hearing, if a child who committed a delinquent act is determined to be in need of treatment or rehabilitation, then after considering the results of such child's risk assessment if the court is contemplating placing such child in restrictive custody, *the court shall enter the least restrictive disposition order appropriate in view of the seriousness of the delinquent act*, such child's culpability as indicated by the circumstances of the particular case, the age of such child, such child's prior record, and such child's strengths and needs." (emphasis supplied)); OCGA § 15-11-602 (a) ("When a child is adjudicated to have committed a . . . class B designated felony act, . . . [t]he court may make one of the following orders of disposition best suited to provide for the rehabilitation of such child and the protection of the community: (1) [a]ny order authorized by Code Section 15-11-601, if the court finds that placement in restrictive custody is not required; or (2) [a]n order placing such child in restrictive custody.").

[28] *Cf. In the Interest of D. M.*, 307 Ga. App. 751, 752-53 (2) (706 SE2d 683) (2011) (considering juvenile's claims in direct appeal that juvenile court failed to merge two offenses as being a challenge to a void disposition).

[29] *Cf., e.g.*, *von Thomas*, 293 Ga. at 571-72 (2) ("[T]he sentencing court had jurisdiction of [the] motion [to vacate] only to the extent that it presented a cognizable claim that the sentence was void. . . . Motions to vacate a void sentence generally are limited to claims that—even assuming the existence and validity of the conviction for

12

due process of law, the juvenile court retains jurisdiction to consider and correct same.[30]

2. The State argues that the juvenile court erred by determining that it should modify D. B.'s disposition when, contrary to the juvenile court's conclusion after considering D. B.'s motion, carrying a weapon in a school zone qualifies as a Class-B designated felony. We agree.

It is well established that the interpretation of a statute is "a question of law, which we review de novo on appeal."[31] And we are mindful that in considering the

---

which the sentence was imposed—the law does not authorize that sentence, most typically because it exceeds the most severe punishment for which the applicable penal statute provides."); *Powers v. State*, 332 Ga. App. 471, 472 (773 SE2d 428) (2015) (physical precedent only) ("[T]he trial court had jurisdiction to consider his motion only to the extent that it presented a cognizable claim that the sentence was void."). *See generally Robbins v. State*, 326 Ga. App. 812, 813-14 (757 SE2d 452) (2014) (rejecting State's contention that trial court should have dismissed defendant's motion for want to jurisdiction for failing to present a cognizable claim, but agreeing with trial court that defendant's sentence was not void and, thus, affirming the denial of defendant's motion to vacate sentence).

[30] *Cf. Nazario*, 293 Ga. at 487 (2) (c) (holding that to "allow [a] defendant to serve a sentence for a criminal conviction that has been identified as illegal and void would not comport with fundamental fairness and due process of law"); *von Thomas*, 293 Ga. at 571 (2) ("[A] sentencing court has jurisdiction to vacate a void sentence at any time.").

[31] *Jackson v. State*, 338 Ga. App. 509, 509 (790 SE2d 295) (2016); *accord State v. Hammonds*, 325 Ga. App. 815, 815 (755 SE2d 214) (2014).

13

meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[32] Toward that end, we must afford the statutory text its plain and ordinary meaning,[33] consider the text contextually,[34] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[35] and seek to "avoid a construction that makes some language mere surplusage."[36] In summary, when the language of a statute

---

[32] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation and citation omitted); *accord Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[33] *Deal*, 294 Ga. at 172 (1) (a); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013).

[34] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, ___U.S. ___, ___ (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *see also Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015) ("The common and customary usages of the words are important, but so is their context." (punctuation omitted)).

[35] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013).

[36] *In the Interest of L. T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (punctuation omitted); *accord Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011).

14

is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[37]

Bearing these principles of statutory construction in mind, the offenses that constitute Class-B designated felonies for purposes of the Juvenile Code are set forth in OCGA § 15-11-2, which provides, in relevant part, that "'Class B designated felony act' means a delinquent act committed by a child 13 years of age or older which, if committed by an adult, would be one or more of the following crimes: . . . [a]n act which constitutes a violation of Code Section 16-11-127.1 involving a . . . [f]irearm, as defined in Code Section 16-11-131[.]"[38] In relevant part, OCGA § 16-11-127.1 (b) provides that it is "unlawful for any person to carry to or to possess or have under such person's control while within a school safety zone . . . any weapon[.]"[39] And OCGA § 16-11-131 defines "firearm" as "includ[ing] any *handgun*, rifle, shotgun, or other weapon which will or can be converted to expel a projectile by the

---

[37] *Holcomb v. Long*, 329 Ga. App. 515, 518 (1) (765 SE2d 687) (2014) (punctuation omitted); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

[38] OCGA § 15-11-2 (13) (N) (i) (I).

[39] OCGA § 16-11-127.1 (b) (1).

15

action of an explosive or electrical charge."[40] The Criminal Code further defines "handgun" as

> a firearm of any description, loaded or unloaded, from which any shot, bullet, or other missile can be discharged by an action of an explosive where the length of the barrel, not including any revolving, detachable, or magazine breech, does not exceed 12 inches; provided, however, that the term "handgun" shall not include a gun which discharges a single shot of .46 centimeters or less in diameter.[41]

The juvenile court accepted D. B.'s argument that his disposition for a Class-B designated felony was void because OCGA § 16-11-131, in addition to defining "firearm" as including "any handgun," serves to criminalize the possession of firearms by convicted felons.[42] And because D. B. "had no adjudications, . . . was not

---

[40] OCGA § 16-11-131 (a) (2) (emphasis supplied).

[41] OCGA § 16-11-125.1 (1).

[42] *See* OCGA § 16-11-131 (b) ("Any person who is on probation as a felony first offender . . . or who has been convicted of a felony . . . and who receives, possesses, or transports any firearm commits a felony and, upon conviction thereof, shall be imprisoned for not less than one nor more than five years; provided, however, that if the felony as to which the person is on probation or has been previously convicted is a forcible felony, then upon conviction of receiving, possessing, or transporting a firearm, such person shall be imprisoned for a period of five years."); OCGA § 16-11-131 (b.1) ("Any person who is prohibited by this Code section from possessing a firearm because of conviction of a forcible felony or because of being on probation as a first offender for a forcible felony pursuant to this Code section and

16

[on] probation, . . . was not under an informal adjustment, and . . . was not under an abeyance," he argues that the definition of "firearm" in OCGA § 16-11-131 does not apply to the facts of his case and, therefore, his act of possessing a handgun in a school safety zone did not qualify as a Class-B designated felony. But the juvenile court erred in accepting this argument.

It is clear from the plain language of the relevant statutes that, for purposes of the Juvenile Code, the General Assembly has included within the category of Class-B designated felonies the act of carrying or possessing a firearm in a school safety zone and has further directed that "firearm" includes "handguns" by making specific reference to the *definition* of "firearm" in OCGA § 16-11-131. That this Section of the Criminal Code goes on to criminalize specific conduct related to its separate definition of "firearm" is of no consequence given the plain language employed by the General Assembly in OCGA § 15-11-2 (13) (N) (i) (I), quoted *supra*.[43] Accordingly, the juvenile court erred by modifying D. B.'s disposition after

---

who attempts to purchase or obtain transfer of a firearm shall be guilty of a felony and shall be punished by imprisonment for not less than one nor more than five years.").

[43] *See supra* notes 31-38 & accompanying text.

determining that same was void because his conduct did not qualify as a Class-B designated felony.

For all these reasons, we reverse the juvenile court's amended disposition.

*Judgment reversed. Ray and Self, JJ., concur.*