**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 28, 2020**

# In the Court of Appeals of Georgia

A19A1880. IN THE INTEREST OF R. M., a child.

HODGES, Judge.

After R. M. entered a negotiated plea to driving under the influence of alcohol–less safe, the Juvenile Court of Chatham County adjudicated him delinquent. Over a period of several months, the juvenile court held various hearings and eventually entered an order of dismissal. On appeal, the State raises three enumerations of error. For the reasons that follow, we affirm.

The undisputed facts presented as part of the plea show that in October 2017, a police officer initiated a traffic stop after witnessing R. M., who was 16 years old at the time, fail to stop at a stop sign. R. M. was alone in the car. A bottle of alcohol was in the vehicle, and there was a strong odor of alcohol. R. M.'s eyes were

bloodshot and he was unsteady on his feet. R. M. admitted to the officer that he had been drinking alcohol.

Following the filing of a delinquency petition, the juvenile court held an adjudicatory hearing in January 2018. R. M. entered a negotiated plea to driving under the influence of alcohol–less safe (OCGA § 40-6-391 (a) (1)).[1] At the adjudicatory hearing, R. M.'s probation officer told the juvenile court that R. M. was complying with previous court-ordered conditions and driving restrictions. The juvenile court adjudicated R. M. delinquent, and ordered R. M. to continue to comply with the prior court-ordered conditions. The next month, in February 2018, the juvenile court held a dispositional hearing at which R. M.'s probation officer testified that R. M. had begun counseling and a six-week early intervention program immediately after the incident, that R. M. had met his intervention goals, had completed DUI driving school and received a certificate, and had strong family support and monitoring. The probation officer testified that he did not believe R. M. was in need of further treatment, services, or rehabilitation. The juvenile court then continued the disposition in order to monitor R. M.'s progress and so that R. M. could

---

[1] As part of the plea, other counts for driving under the influence, failure to stop at a stop sign, underage possession of alcohol, and reckless driving were dismissed.

continue to be randomly screened for alcohol. The court also imposed a $150 supervision fee, ordered R. M. not to consume alcohol, continued its restrictions on R. M.'s driving, and noted that R. M. already was performing community service.

In May 2018, the juvenile court held an administrative review hearing which was not transcribed, and found that all of R. M.'s random drug and alcohol screens had been negative, that he had completed a substance abuse program, had paid his supervision fee, was doing well in school, had abided by all court-ordered driving restrictions, and had spoken to both a victim and a perpetrator of drunk driving. Over the State's objection, the juvenile court entered an order of dismissal. The State then moved for an additional dispositional hearing, arguing that the adjudicatory and dispositional hearings should have been bifurcated and that it had the right to present additional evidence. The juvenile court vacated its dismissal order and in June 2018, held another dispositional hearing, at which R. M.'s probation officer testified that R. M.'s random drug and alcohol tests always had been negative, that he was doing very well in school, had been proactive in seeking treatment, and had consistently followed the court's orders and restrictions. The probation officer testified that he did "not see any need for rehabilitation services or supervision[.]"

The juvenile court then issued another order of dismissal, and the State filed the instant appeal, contending that the juvenile court erred in: (1) failing to follow the statutory requirement that it submit the final records of R. M.'s adjudication and disposition to the Department of Driver Services; (2) entering what amounted to an impermissible judicial reprimand; and (3) disposing of R. M.'s case under the juvenile code rather than the statute applicable to adults.

Where the juvenile court's decision involves interpretation of a statute, we conduct a de novo review. *In the Interest of D. B* ., 341 Ga. App. 559, 565 (2) (802 SE2d 19) (2017).

1. The State first argues that the juvenile court erred in not reporting the disposition and adjudication of R. M.'s charge to the Division of Driver Services. We disagree.

OCGA § 15-11-630 (i) provides that:

*Upon finding that a child has committed* a juvenile traffic offense or *an act of delinquency*[2] *which would be a violation of Title 40 if committed by an adult, the court shall forward, within ten days, a report of the final adjudication and disposition of the charge to the Department of*

---

[2] See OCGA § 15-11-630 (c) (defining driving under the influence of alcohol or drugs as an act of delinquency).

*Driver Services; provided, however, that this procedure shall not be applicable to those cases which have been dismissed* or in which a child and his or her parent, guardian, or legal custodian have been reprimanded, counseled, or warned by the court. The Department of Driver Services shall record the adjudication and disposition of the offense on such child's permanent record, and such adjudication and disposition shall be deemed a conviction for the purpose of suspending or revoking such child's driver's license. Such record shall also be available to law enforcement agencies and courts as are the permanent traffic records of adults.

(Emphasis supplied.)

Additionally, OCGA § 15-11-600 (a) (1) provides, in pertinent part, that "[*a*]*fter finding that a child has committed a delinquent act*, the court shall hear evidence and determine whether: (A) such child is in need of treatment, rehabilitation, or supervision.. . . " (Emphasis supplied.) At several hearings, as outlined above, the juvenile court heard such evidence. In the dismissal order appealed from, the juvenile court found that R. M. had completed a six-week, level-one substance abuse treatment program; had been drug- and alcohol-free through a series of more than eight random tests administered both by his treatment program and his intake officer; was continuing to receive counseling; had excellent home supervision, good grades and no disciplinary referrals; and, as ordered by the court, had met with both a victim and

5

a perpetrator of drunk driving, and had complied with court-ordered driving restrictions.[3]

As OCGA § 15-11-600 (d), provides, "[i]f the court finds that a child who committed a delinquent act is not in need of treatment, rehabilitation, or supervision, it *shall dismiss* the proceeding[.]" (Emphasis supplied.)

The State argues that only proceedings dismissed for lack of evidence are exempt from reporting to the Division of Driver Services, but cites no on-point legal authority in support of these arguments.[4] The plain language of OCGA §§ 15-11-600 (a) (1), (d) and 15-11-630 (i), as quoted above, authorizes the juvenile court's decision. See generally *In the Interest of L. J.*, 279 Ga. App. 237, 238 (630 SE2d 771) (2006) (where statutory language is susceptible to "only one reasonable and natural construction, courts must construe the statute accordingly") (citation omitted). We find no error.

---

[3] On appeal, the State does not challenge the basis of the juvenile court's factual findings.

[4] The State's citation to *State v. Miller*, 335 Ga. App. 700 (782 SE2d 803) (2016) is distinguishable in that *Miller*, which is physical precedent only, addressed dismissals of criminal charges rather than dismissals of juvenile adjudications or dispositions. See id. at 701.

2. The State next argues that the juvenile court's dismissal order, which finds that R. M. is not in need of treatment, rehabilitation, or other services, is a "judicial reprimand" that is "not in accordance with the spirit of the law."

In support of this contention, the State cites OCGA § 15-11-630 (g) (1), which provides that "[i]f the court finds on the admission of a child . . . that the child committed the offense charged, it may make one or more of the following orders: (1) Reprimand, counsel, or warn such child and his or her parent . . . provided, however, that *this disposition order shall not be available for any act of delinquency*." (Emphasis supplied.) The State argues that the restrictions imposed by the juvenile court took place before the final disposition, as did R. M.'s substance abuse treatment and counseling,[5] which were not specifically ordered by the court. In particular, the State contends that the juvenile court did not order "further driving safety courses, drug or alcohol counseling, fines or community services." Essentially, the State contends that the juvenile court was required to order continuing, post-disposition services or restrictions. The State cites no legal authority for this specific proposition.

---

[5] Contrary to the State's contention, the juvenile court's order finds that R. M.'s counseling was ongoing.

Rather, OCGA § 15-11-630 (g) (2) - (5) provides that the juvenile court "*may* make one or more of the following orders[,]" including suspension of the child's privilege to drive, requiring the child to attend traffic school or a substance abuse clinic, assessing a fine, or participating in community service. (Emphasis supplied.) The statute's conditional language, however, does not mandate that the juvenile court issue such orders.

Here, the juvenile court's order contains specific findings about R. M.'s apparently self-initiated counseling, substance-abuse treatment, and rehabilitation. It also contains findings about his compliance with court-ordered restrictions regarding driving, alcohol, and behavior. Because the juvenile court did impose restrictions on R. M., we cannot say that its order amounted to merely the type of reprimand, counseling, or warning which the statute permits only for juvenile traffic offenses, and not for juvenile delinquency offenses. See OCGA § 15-11-630 (g) (1).

As outlined above, OCGA § 15-11-600 (a) (1) provides that "[a]fter a finding that a child has committed a delinquent act, the court shall hear evidence and determine *whether*: (A) Such child is in need of treatment, rehabilitation, or supervision[.. . . ]" (Emphasis supplied.) OCGA § 15-11-600 (d) further provides that "[i]f the court finds that a child who has committed a delinquent act is not in need of

8

treatment, rehabilitation, or supervision, *it shall dismiss the proceeding* and discharge such child from any . . . restriction previously ordered." (Emphasis supplied.) To interpret the statute as the State suggests would have the effect of rendering meaningless both the discretionary language of OCGA § 15-11-600 (a) (1) (giving juvenile courts the authority to decide whether a child needs rehabilitation, treatment, or services) and the mandatory language of OCGA § 15-11-600 (d) (requiring the juvenile court to dismiss a proceeding if, as here, it finds that the delinquent child is not in need of treatment, rehabilitation, or services). See generally *In the Interest of M. D. H.*, 300 Ga. 46, 53 (4) (793 SE2d 49) (2016) ("We normally avoid construing statutes to leave parts of them meaningless") (citation and punctuation omitted). We find no error.

3. Finally, the State argues that a conflict exists between the dispositional requirements for juveniles adjudicated delinquent for driving under the influence, as provided in OCGA § 15-11-600, and the requirements for OCGA § 40-6-391, the statute applicable to adults convicted of driving under the influence. We disagree.

The State points to OCGA § 40-6-391 (c)'s language providing that "*[e]very person convicted* of violating this Code section shall, upon a first or second conviction thereof, be guilty of a misdemeanor . . .." Though the State does not

9

present specific arguments, it contends that "'every person' who commits the act of driving under the influence is to be punished in accordance with the law[,]" reiterating in its appellate brief the contention that the juvenile court in the instant case should have required R. M. to "pay a fine, serve a period of imprisonment and probation, complete community service, complete a DUI alcohol or drug program and complete a substance abuse evaluation." See generally OCGA § 40-6-391 (c) (1) (A) - (F). The State argues that given the "silence" of the Juvenile Code as to the disposition of a DUI delinquency, the more specific provisions of OCGA § 40-6-391 (c) requiring specified punishments govern even in the juvenile context.

As an initial matter, the Juvenile Code is not silent as to the disposition of a driving under the influence delinquency. OCGA § 15-11-630 (g) provides that if a juvenile court finds upon the evidence or the child's own admission that the child has committed the offense charged, it "*may* make one or more of the following orders[.]" (Emphasis supplied.) The statute then goes on to list possible punishments or services which the juvenile court *may* order, but is not required to order, including suspension of the child's driver's license, community service, and participation in substance abuse programs. See OCGA § 15-11-630 (g) (2) - (6). Additionally, the statute provides that the juvenile court *may* "[p]lace such child on probation subject to the

10

conditions and limitations imposed by Title 40 governing probation granted to adults for like offenses . . .." OCGA § 15-11-630 (g) (7). By its own terms, the statute specifically gives the juvenile court the authority to determine the proper course of treatment, services, punishment, or rehabilitation applicable to the child at issue. In addition, OCGA § 15-11-630 (i) provides that if a juvenile court finds a child delinquent of an act which, if committed by an adult, would violate Title 40, and if the juvenile court does not dismiss the case, then the "Department of Driver Services shall record the adjudication and disposition of the offense on such child's permanent record, and such adjudication and disposition shall be deemed a conviction for the purpose of suspending or revoking such child's driver's license."

More pertinent, however, is the specific language of OCGA § 40-6-391 (c), which provides that "[e]very person *convicted* of violating this Code section" be subject to various punishments. (Emphasis supplied.) "[A]n adjudication of delinquency is not a conviction of a crime." (Punctuation and footnote omitted.) *In the Interest of D. B.*, 341 Ga. App. at 564 (1). It is well-settled that "a juvenile court cannot convict a juvenile of a crime as defined by Georgia law. A juvenile court convicts a child for being delinquent, and such an adjudication is not a conviction of a crime or crimes." (Citations omitted.) *A. B. W. v. State*, 231 Ga. 699, 701 (II) (203

11

SE2d 512) (1974); accord *In the Interest of J. W.*, 309 Ga. App. 470, 471-472 (711 SE2d 48) (2011) (finding, as to a juvenile defendant, that although OCGA § 15-11-131 provides that "'[*a*]*ny person* who is on probation as a felony first offender . . . who receives, possesses or transports any firearm' commits the offense of possession of a firearm by a convicted felon[] . . . [this] does not constitute a criminal conviction sufficient to support a conviction or delinquency adjudication for possession of a firearm by a convicted felon") (footnotes omitted; emphasis supplied). We find no error.

 *Judgment affirmed. Dillard, P. J., and Gobeil, J., concur*.